IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAEMONT WHEELER,                    :
                                    :
            Petitioner,             :
                                    :
    v.                              :        Civil Action No. 15-1133-RGA
                                    :
DAVID PIERCE, Warden, and           :
ATTORNEY GENERAL OF THE             :
STATE OF DELAWARE,                  :
                                    :
            Respondents.            :

---

## <u>MEMORANDUM OPINION</u>

Daemont Wheeler. *Pro se* Petitioner.

Katherine Joy Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

May 16, 2017
Wilmington, Delaware



ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Daemont Wheeler's Application for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 3) The State filed an

Answer in opposition, contending that the Petition should be dismissed in its entirety. (D.I. 17)

For the reasons discussed, the Court will dismiss the Petition.

## I.    BACKGROUND

On November 13, 2009, Herbie Davis was shot in the back and leg several times while he was in the kitchen of Tricia Scott's home near Dover. Davis lived in Wilmington but stayed at Scott's home occasionally and considered her his fiancée. Davis and Scott were planning on Davis moving into her home. Several of Tricia Scott's children, including Shani and Amber, and grandchildren, also lived with her.

[Petitioner] was Amber's boyfriend and frequently stayed in Amber's bedroom in the basement of Scott's home. In 2009, Amber gave birth to a baby, fathered by [Petitioner]. Davis testified that he and [Petitioner] did not get along after Davis told [Petitioner] that he should get a job to help support Amber, the baby, and the household.

Davis testified that shortly before the shooting on November 13, 2009, [Petitioner] had been downstairs with Amber. Davis and Shani were in the kitchen area. When [Petitioner] came upstairs, he had a disagreeable exchange with Davis before [Petitioner] walked out the back door. Davis then went out the front door to smoke a cigarette and returned several minutes later.

Davis testified that after he returned and was talking with Shani in the kitchen area, [Petitioner] came up behind him and shot him several times after saying, "I really don't like you." After shooting Davis, [Petitioner] fled. Davis fell to the kitchen floor and told Shani that he could not feel his legs. Shani called 911 and applied pressure to Davis' leg. When Amber rushed upstairs to the kitchen, after hearing the gun shots, Shani told her: "Daemont just shot Herbie—Mr. Herbie."

At 8:55 p.m. on November 13, 2009, Delaware State Police Corporal Thomas Lamon was dispatched to investigate a report that someone had been shot. Corporal Lamon was the first police officer to arrive at Trisha Scott's home. When Corporal Lamon entered the residence, he saw Davis on the kitchen floor surrounded by blood. Shani was kneeling over Davis. Corporal Lamon testified that Davis and Shani were the only people in the kitchen, and that Shani "was clearly upset, shaken." Davis told Corporal Lamon, "Daemont shot me."

Delaware State Police Detective Mark Ryde was the chief investigating officer. When he arrived at the Scott residence, Detective Ryde conducted separate recorded interviews of Trisha Scott's two daughters, Shani and Amber. Those interviews were conducted in Detective Ryde's police car.

After the on-scene investigation concluded, Detective Ryde attempted to locate the suspect, [Petitioner]. After Detective Ryde was unable to locate [Petitioner] at two addresses, he prepared an arrest warrant. That arrest warrant was placed in the National Crime Index Center database.

On November 23, 2009, Detective Ryde received information that [Petitioner] might be at a certain apartment in Harrington, Delaware. The apartment house was owned by Mary Zachery. Detective Ryde obtained a search warrant. Inside the unoccupied apartment, Detective Ryde found a document and prescription medication with [Petitioner]'s name. Later, Detective Ryde conducted an unrecorded interview of Mary Zachery at State Police Troop No. 3.

In January 2010, in an effort to locate [Petitioner], Detective Ryde contacted the United States Marshal's Task Force. [Petitioner] was apprehended on January 27, 2010, in Wayne County, Michigan. After waiving an extradition hearing, [Petitioner] was returned to Delaware on February 17, 2010.

*Wheeler v. State*, 36 A.3d 310, 312–13 (Del. 2012)

Petitioner was indicted for attempted first degree murder, possession of a firearm during the commission of a felony ("PFDCF"), possession of a firearm by a person prohibited ("PFBPP"), and possession of ammunition by a person prohibited ("PABPP"). (D.I. 17 at 1) In April 2011, a Delaware Superior Court jury convicted Petitioner of all charges. *See Wheeler*, 36 A.3d at 313. The Superior Court sentenced him as an habitual offender to life in prison on the attempted first degree murder charge, and to a total of thirty-eight years of incarceration on the remaining charges. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences on February 7, 2012. *See Wheeler*, 36 A.3d at 312.

2

In December 2012, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, alleging ineffective assistance of counsel. The Superior Court denied the motion on October 3, 2013. *See Wheeler*, 36 A.3d at 312. On appeal, the Delaware Supreme Court vacated the Superior Court's judgment without addressing its merits, and remanded the case back to the Superior Court so that it could appoint counsel to represent Petitioner. *See Wheeler v. State*, 83 A.3d 738 (Table), 2014 WL 44715, at *1 (Del. Jan. 2, 2104). In January 2015, appointed counsel notified the Superior Court that counsel had thoroughly reviewed the record and were unable to assert any meritorious post-conviction claims. Counsel filed a motion to withdraw and a supporting memorandum of law pursuant to Delaware Superior Court Criminal Rule 61(e)(2). (D.I. 20-4 at 131-143) Petitioner filed a response. On February 27, 2015, the Superior Court granted post-conviction counsel's motion to withdraw and denied the Rule 61 motion. (D.I. 20-4 at 188) Post-conviction counsel and Petitioner filed notices of appeal, and post-conviction counsel filed a motion for the appointment of substitute counsel. *See Wheeler v. State*, 127 A.3d 1163 (Table), 2015 WL 6150936, at *2 (Del. 2015). The Delaware Supreme Court permitted post-conviction counsel to withdraw and appointed substitute post-conviction counsel ("appellate post-conviction counsel"). Thereafter, appellate post-conviction counsel filed a brief and motion to withdraw. *Id*. On October 19, 2015, the Delaware Supreme Court affirmed the Superior Court's decision and denied appellate post-conviction counsel's motion to withdraw as moot. *Id.* at *5.

## II.     GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i)  there is an absence of available State corrective process; or
>      (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at

844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural

manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S.

447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts.  *See Lines v. Larkins,* 208 F.3d 153, 160

(3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically

4

exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner

must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

6

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner's timely filed § 2254 Petition asserts the following six grounds for relief: (1) the Superior Court's admission of certain testimony violated Petitioner's Sixth Amendment right to confront witnesses; (2) the State violated Petitioner's due process right to a fair trial by failing to turn over a witness' taped statement as required by Delaware Superior Court Criminal Rule 26.2 and *Jencks v United States*, 353 U.S. 657 (1957); (3) the State engaged in prosecutorial misconduct; (4) defense counsel provided ineffective assistance; (5) appellate counsel provided ineffective assistance; and (6) Petitioner was denied his right to a speedy trial. The Court will address the Claims *seriatim*.

### A. Claim One:  Violation of Right to Confront Witnesses

In Claim One, Petitioner contends that his Sixth Amendment right to confront witnesses was violated in two ways. First, he contends that the trial court misapplied Federal Rule of Evidence 803(1) and (2)[1] by permitting Davis' "recitation of" Shani's excited utterance identifying Petitioner as the shooter, and that this misapplication resulted in the violation of his

---

[1] Petitioner cites to the Federal Rules of Evidence in this proceeding, whereas he cited to the Delaware Rules of Evidence in his state court cases.

confrontation rights. Second, he contends that his Sixth Amendment right to confront witnesses was violated by the introduction of inadmissible hearsay through Detective Ryde's testimony. Specifically, Petitioner contends that the state courts erroneously held that Detective Ryde's testimony was properly admitted because that decision was based, in part, on its conclusion that Davis' recitation of Shani's statement was properly admitted.

### 1. Davis' testimony regarding Shani's excited utterance

> The first witness at [Petitioner's] trial was the shooting victim, Davis. During his direct examination, Davis identified [Petitioner] for the jury as the man who came from behind and shot him multiple times while Davis was standing in the kitchen of Tricia Scott's home talking to Shani. Davis turned around after he was shot. He testified: "I seen his face. I seen the gun," which was described as a silver semi-automatic. Davis also testified that he recognized [Petitioner's] voice and that before the shooting, Davis heard [Petitioner] shout "I really don't like you." Davis repeated his identification of [Petitioner] as the shooter at several other points during his direct testimony. For example, Davis testified that he had immediately identified [Petitioner] as the shooter to Trooper Lamon when the trooper arrived at the scene and found Davis wounded on the kitchen floor. On cross-examination, Davis added: "I knew who shot me," and "I seen him shoot me...."

> Davis also testified that after he was shot, Amber Scott immediately came upstairs to the kitchen from the basement. According to Davis, Shani Scott told Amber that "[Petitioner] just shot Herbie—Mr. Herbie." Defense counsel raised a hearsay objection to Davis relating what eyewitness Shani Scott told her sister, Amber. Herbie Davis also testified without objection that Shani Scott told the troopers who first arrived at the scene that [Petitioner] had shot Davis. Those statements are not at issue in this appeal. The trial judge overruled the objection stating: "Well, I think that would qualify as a present sense reaction to what the scene was at the time." When the prosecutor added that Shani's statement to her sister immediately after the shooting also qualified for admission as an excited utterance, the trial judge agreed.

*Wheeler*, 36 A.3d at 313-14.

On direct appeal, the Delaware Supreme Court held that the Superior Court properly admitted Davis' recitation of Shani's statement under Delaware Rule of Evidence 803(1) and (2) as both a present sense impression and as an excited utterance. *See Wheeler*, 36 A.3d at 314.

8

The Delaware Supreme Court did not analyze the issue of Davis' testimony as a Confrontation Clause violation, because Petitioner only presented the argument as an error of Delaware evidentiary law. Petitioner also did not present the instant Confrontation Clause argument to the Delaware Supreme Court on post-conviction appeal. Therefore, the Court concludes that Petitioner's Confrontation Clause argument regarding Davis' testimony is unexhausted.

The Court further concludes that the instant Confrontation Clause argument is procedurally defaulted, because any attempt by Petitioner to present this argument in a new Rule 61 motion would be time-barred. *See* Del. Super. Ct. Crim. R. 61(i)(1). Petitioner does not allege, and the Court does not discern, any cause for Petitioner's default of this Claim. In the absence of cause, the Court will not address the issue of prejudice, and Petitioner's failure to provide new reliable evidence of his actual innocence precludes the applicability of the miscarriage of justice exception to his default. For these reasons, the Court will deny as procedurally barred Petitioner's contention that his confrontation rights were violated by Davis' recitation of Shani Scott's excited utterance identifying Petitioner as the shooter.

### 2. Detective Ryde's testimony

In support of its case against [Petitioner], the State introduced into evidence the substance of out-of-court statements by three witnesses who were unavailable to testify at trial: Shani Scott, Amber Scott, and Mary Zachery. Shani Scott was with Davis when the shooting occurred and Amber Scott was downstairs in the basement. Mary Zachery, [Petitioner's] landlord at a rooming house, was not present at the crime scene.

Detective Ryde took statements from Shani and Amber approximately two hours after the shooting, in a police vehicle outside of Tricia Scott's residence. Mary Zachery's statement was taken at a later time. Over a defense objection, the prosecutor asked Detective Ryde if, after interviewing Shani Scott for a recorded statement, "did you have any reason to believe that a suspect other than the defendant was involved?" Detective Ryde responded "no." The prosecutor then asked, "[w]as she [Shani] able to provide you with the specific words that were

9

exchanged between Herbie and the defendant that she recalled hearing?" Detective Ryde answered, "Yes."

Amber Scott was with [Petitioner] immediately before the shooting and rushed upstairs to the kitchen after the shooting. The prosecutor asked Detective Ryde whether Amber Scott provided him any information about what had occurred in the Scott residence that night. After acknowledging that Amber had, Detective Ryde was asked whether after speaking with Amber, he had any reason to believe that any suspect other than [Petitioner] was involved with the shooting. Detective Ryde responded that he did not.

Mary Zachery had been [Petitioner's] landlord. The prosecutor asked Detective Ryde if Mary Zachery had any pertinent information to provide concerning the shooting. Over a defense objection, Detective Ryde was permitted to answer that she did, and that based on that information, he had no reason to believe that any person other than Wheeler was involved in the shooting.

Shani Scott, Amber Scott, and Mary Zachery were asked questions by Detective Ryde that were similar in format. Each question was the subject of a defense objection at trial that was overruled. In each instance, the chief investigating officer, Detective Ryde, was asked by the prosecutor if after speaking with a particular named witness, he had any reason to believe that any suspect other than [Petitioner] was involved in the 2009 shooting of Davis.

*Wheeler*, 36 A.3d at 315.

During its direct examination of Detective Ryde, the State did not ask Ryde whether each of the three witnesses (Shani Scott, Amber Scott, Mary Zachery) said they believed Petitioner shot Davis. *See Wheeler*, 36 A.3d at 317. Rather, the State asked Ryde if the three witnesses identified anyone other than Petitioner as the shooter, to which Ryde responded negatively. *Id.* On direct appeal, the Delaware Supreme Court concluded that Detective Ryde's testimony violated Delaware Rule of Evidence 802 because it constituted improper indirect hearsay testimony. *See Wheeler*, 36 A.3d at 317. The Delaware Supreme Court also held that the admission of Detective Ryde's testimony violated the Confrontation Clause of the Sixth Amendment, but that the admission was harmless beyond a reasonable doubt. *Id.* at 317-21.

Since the Delaware Supreme Court adjudicated the merits of Confrontation Clause issue

presented in the second contention of Claim One, the Court must review the Delaware Supreme

Court's decision under § 2254(d) to determine if it was either contrary to, or an unreasonable

application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all

criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses

against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004) and its

progeny, the United States Supreme Court held that the Confrontation Clause bars the admission

of testimonial statements of witnesses absent from trial that are admitted to establish the truth of

the matter asserted in the statement, unless the witness is unavailable to testify and the defendant

had a prior opportunity for cross-examination. *See Crawford*, 541 U.S. at 59, 60 n. 9; *see also*

*Davis v. Washington*, 547 U.S. 813, 823-24 (2006). A testimonial statement is a statement that is

made during non-emergency circumstances and which the declarant would objectively foresee

might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423

F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.

A violation of a defendant's rights under the Confrontation Clause does not necessarily

require reversal. Rather, a Confrontation Clause violation is subject to a harmless error analysis.

*See Ali v. Adm'r New Jersey State Prison*, ___ F. App'x ___, 2017 WL 89016, at \*2 (3d Cir. Jan.

10, 2017). "The test for whether a federal constitutional error [such as a Confrontation Clause

violation] was harmless depends on the procedural posture of the case." *Davis v. Ayala*, 135

S.Ct. 2187, 2197 (2015). For instance, on direct appeal, a court assessing the prejudicial impact

of a constitutional error in criminal trial must apply the harmless error standard articulated in

11

*Chapman v. California*, 386 U.S. 18, 24 (1967). *See Davis*, 135 S.Ct. at 2197. In contrast, on habeas review, a court assessing the prejudicial impact of a constitutional error in a state criminal trial must apply the harmless error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *See Davis*, 135 S.Ct. at 2197; *Fry v. Pliler*, 551 U.S. 112, 117-122 (2007) (explaining that the *Brecht* harmless error standard of review subsumes the standards announced in AEDPA); *Bond v. Beard*, 539 F.3d 256, 275-76 (3d Cir. 2008) (explaining that *Fry* instructs federal courts to conduct an independent harmless error analysis). Pursuant to *Brecht*, a court must determine if the trial error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007). The "crucial inquiry is the impact of the error on the minds of the jurors in the total setting." *Hassine v. Zimmerman*, 160 F.3d 941, 955 (3d Cir. 1998).

Whether a Confrontation Clause violation is harmless beyond a reasonable doubt under *Brecht* depends on several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see Ali,* 2017 WL 89016, at *2. Under the *Brecht* standard, a state court's harmlessness determination still has significance. *See Davis*, 135 S.Ct. at 2198. Consequently, if a state appellate court has concluded, consistent with the *Chapman* standard, that a federal constitutional error is harmless beyond a reasonable doubt, AEDPA's § 2254(d) and the "actual prejudice" requirement articulated in *Brecht* dictate that deference be given to the state court's decision. *Id.* at 2199. However, "[i]f, after reviewing the

12

trial record, [the court] is in 'grave doubt' as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, such error is not harmless irrespective of whether the State could theoretically sustain a conviction without the erroneously admitted evidence." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *see also Yohn v. Love*, 76 F.3d 508, 523 (3d Cir. 1996) ("The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error.").

In this case, because neither party challenges the Delaware Supreme Court's determination that the admission of Detective Ryde's testimony violated Petitioner's rights under the Confrontation Clause, the Court will limit its analysis to determining if the Delaware Supreme Court reasonably applied clearly established federal law in holding that the Confrontation Clause violation was harmless. After applying the *Van Arsdall* factors to Detective Ryde's testimony, the Court concludes that any Confrontation Clause error arising from the admission of Ryde's testimony was harmless. Davis' testimony was more compelling than Ryde's testimony, considering that Davis was the victim and knew Petitioner well. Ample testimonial and ballistics evidence[2] supported the State's case and corroborated the main points of Ryde's testimony, especially Davis' particularly compelling eyewitness identification of Petitioner. *See Wheeler*, 36 A.3d at 321. Additionally, there was no evidence contradicting the State's case. There was no evidence supporting a conclusion that anyone else had any motive to shoot Davis. Finally, the State did not refer to Detective Ryde's inadmissible negative responses during its closing argument but, instead, chose to highlight the fact that "[n]o information, no

---

[2]At the shooting scene, the Delaware State Police found a total of six shell casings. A forensic firearms examiner testified that the six shell casings were all fired from the same weapon, a 9 mm semiautomatic. *See Wheeler*, 36 A.3d at 313 n.1.

other evidence collected pointed to anybody else but that man." (D.I. 6-4 at 44) After viewing

these factors together, the Court concludes that the Delaware Supreme Court reasonably held that

Detective Ryde's three inadmissible negative responses added little to the State's case. The

Court concludes that the Delaware Supreme Court reasonably held that Detective Ryde's

inadmissible responses were cumulative to Davis' detailed identification at trial of Petitioner as

the person who shot him and to the admissible shooter-identification statement Shani Scott made

to her sister Amber.[3] *See Wheeler*, 36 A.3d at 321; (D.I. 6 at 8, 66-99; D.I. 6-1 at 8-53, 58-60;

D.I. 6-3 at 63-67) Thus, the Court is not in "grave doubt" as to whether the trial court's

erroneous admission of Detective Ryde's testimony had a substantial and injurious effect or

influence in determining the jury's verdict. Accordingly, the Court will deny the Confrontation

Clause argument in Claim One.

### B. Claims Two and Three: Procedurally Barred

In Claim Two, Petitioner argues that he was deprived of a fair trial because the State

failed to turn Davis' taped police statement over to the defense, which prevented defense counsel

from effectively cross-examining Davis. In Claim Three, Petitioner asserts that the State

engaged in prosecutorial misconduct during its closing argument by making improper remarks

and vouching for the credibility of state witnesses. Specifically, he contends that: (1) the State

"suggested [throughout the course of the trial] that Herbie Davis 'witnessed' [Petitioner] go out

the back door, which contradicts Herbie Davis' earlier testimony [that Petitioner] went out the

back door, came back in, then went downstairs, that's when Davis put on his sneakers and went

---

[3]As previously explained, Shani's statement to Amber identifying Petitioner as the shooter was
admissible as a present sense impression under D.R.E. 803(1) and as an excited utterance under
D.R.E. 803(2). *See Wheeler*, 36 A.3d at 315.

14

outside on the front porch to smoke a cigarette" (D.I. 4 at 18); (2) the State used the phrase "we know" four times during closing argument (D.I. 4 at 19); and (3) the State said in closing, "[Petitioner] shot him," and implied to the jury that they could infer intent from the fact that Petitioner pulled the trigger (D.I. 4 at 20).

The record reveals that Petitioner did not present Claims Two and Three as free-standing prosecutorial misconduct/constitutional violations to the Delaware Supreme Court. Rather, in his Rule 61 proceeding, Petitioner argued that appellate counsel was ineffective for failing to raise Claim Two and the second allegation of Claim Three on direct appeal, and he did not present the first and third allegations of Claim Three to the Delaware Supreme Court. Presenting a constitutional violation in the context of an ineffective assistance of counsel argument does not exhaust state remedies for the underlying constitutional claim. *See Willis v. Vaughn*, 48 F. App'x 402, 406 (3d Cir. 2002). Since, at this juncture, a Rule 61 motion raising Claims Two and Three would be time-barred by Delaware Superior Court Criminal Rule 61(i)(1), the Court must treat the Claims as technically exhausted but procedurally defaulted.

Petitioner attempts to establish cause by blaming appellate counsel for failing to raise Claims Two and Three on direct appeal. An attorney's error can constitute cause for a procedural default, but only if the petitioner first presented that ineffective assistance of counsel claim to the state courts as an independent claim and the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. In turn, an ineffective assistance of counsel claim that is itself procedurally defaulted cannot constitute cause to excuse a petitioner's default of the underlying substantive claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000). As discussed later in this Opinion, Petitioner procedurally defaulted his

15

argument regarding appellate counsel's failure to present Claim Three (1) and (3) to the Delaware Supreme Court, and appellate counsel's failure to present Claims Two and Three (2) on direct appeal did not amount to constitutionally ineffective assistance. *See infra* at 23-25. Therefore, Petitioner has failed to establish appellate counsel's performance as cause for his default of Claims Two and Three.

Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice.[4] Moreover, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the application of the miscarriage of justice exception to excuse his default. Accordingly, the Court will deny Claims Two and Three as procedurally barred from federal habeas review.

### C. Claim Four: Ineffective Assistance of Defense Counsel

Next, Petitioner asserts that defense counsel provided ineffective assistance by: (1) failing to consult a medical expert or otherwise investigate or challenge Davis' ability to turn around and identify Petitioner as the shooter after being shot in the spine; (2) failing to object to the State's use of the phrase "we know" during closing argument; (3) failing to move to sever the PFBPP and PABPP charges; and (4) failing to obtain or review the ballistics expert's report before cross-examining that expert. The Delaware Supreme Court denied as meritless all of the allegations in Claim Four. Therefore, Claim Four will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

---

[4]Nevertheless, Petitioner cannot establish that he was prejudiced by the State's failure to turn over Davis' taped police statement because the record indicates that no such tape exists. *See Wheeler*, 2015 WL 6150936, at *4.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegations. Consequently, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

17

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing this inquiry, the Court must review the Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[5] *Richter*, 562 U.S. at 105. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Failure to investigate effect of injury on Davis

According to Petitioner, if defense counsel had consulted with an expert before cross-examining Davis, counsel could have impeached Davis' testimony by questioning Davis' ability to turn around and identify Petitioner after he had been shot in the spine and became paralyzed. This argument does not warrant relief. First, Davis was able to recognize Petitioner's voice because he and Petitioner were well-acquainted. *See Wheeler v. State*, 2011 WL 6431452, at *5-

---

[5]As explained by the *Richter* Court,

   [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

6, 8 (State's Ans. Br., Dec. 8, 2011). Second, Petitioner's contention about the type of information a medical expert would have provided to defense counsel is pure speculation because he does not identify any specific medical expert who would have substantiated his assertion that Davis could not have turned around to identify him after the shooting. Given these circumstances, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* when holding that Petitioner's unsupported contention "does not overcome the strong presumption that trial counsel's representation was reasonable or show a reasonable probability of a different outcome at trial." *Wheeler*, 2015 WL 6150936, at *3.

### 2. Failure to object to prosecutorial misconduct

In his second assertion of Claim Four, Petitioner contends that defense counsel should have objected to the State's use of the phrase "we know" during closing argument as constituting improper vouching. Here is the relevant excerpt from the State's closing argument:

> What does he [Petitioner] do, then? He goes outside, the State would suggest, to go get his gun, or he got it when he went down into the basement, and came back up, but we know he did get a gun. And we know he pulled it out. And we know he shot the gun six times at Herbie Davis, striking him four times. We also know that all of those shots came from the same gun.

*Wheeler*, 2015 WL 6150936, at *4.

In Petitioner's Rule 61 proceeding, the Superior Court denied Petitioner's instant argument for failing to establish prejudice because, "[g]iven the abundance of eyewitness evidence in this case any prejudice suffered is harmless as noted by the [Delaware] Supreme Court on direct appeal." (D.I. 20-4 at 141) The Delaware Supreme Court affirmed that decision on post-conviction appeal, opining that,

> [e]ven assuming the [State's] statements constituted impermissible vouching rather than logical inferences from the evidence at trial and [Petitioner] could

19

satisfy the first prong of *Strickland*, [Petitioner] has not established a reasonable probability that the outcome of the proceedings would have been different given the record in this case, including Davis' "emphatic" and "compelling" identification of [Petitioner] as the person who shot him.

*Wheeler*, 2015 WL 6150936, at *4.

As explained by the Third Circuit,

[v]ouching is a type of prosecutorial misconduct. It constitutes an assurance by the prosecuting attorney of the credibility of a government witness through personal knowledge or by other information outside of the testimony before the jury. In order to find vouching, two criteria must be met: (1) the prosecution must assure the jury that the testimony of a Government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge or other information that is not before the jury.

*Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir. 2002) (internal citations omitted). When viewed in context with this definition, the State's "we know" statements did not amount to improper vouching.[6] Instead, the statements appear to be a logical reiteration of the evidence presented at trial, not an attempt to establish the credibility of the State's witnesses. *See, e.g., United States v. Bentley*, 561 F.3d 803, 812 (8th Cir. 2009) ("Use of 'we know' and 'I submit' is not plain error if it is used 'to refer the jury to the government's evidence and to summarize the government's case against the defendants.'"). The "we know" statements occurred well into the State's closing argument and after the State had summarized the identification evidence. Their use was not in the context of the identification argument, but in the context that the evidence, as previously argued, established the elements of attempted first degree murder.

---

[6]Which is not to say that the "we know" rhetoric is appropriate for a prosecutor. It is not. A prosecutor's use of "we" includes the prosecutor. A prosecutor should not be telling a jury what the prosecution knows. In this case, however, the use of "we know" did not allude to any extra-record knowledge.

Nevertheless, even if the "we know" statements were improper, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to object to those statements. Davis, who knew Petitioner well, provided eyewitness testimony describing how Petitioner shot him. Corporal Lamon testified that Davis told him that Petitioner shot him (D.I. 6-1 at 58), and Detective Ryde corroborated that Davis indicated Petitioner was the shooter (D.I. 121-2 at 432-434, 449). The jury was presented with a stipulation that Petitioner was prohibited from owning or possession a firearm and/or ammunition after having been convicted of a felony or crime of violence involving physical injury. (D.I. 21-2 at 372) An expert provided detailed ballistics evidence during the trial. Given the nature of the offense, the eye-witness testimony, and the ballistics evidence, Petitioner cannot demonstrate a reasonable probability that the outcome of his criminal trial would have been different but for defense counsel's failure to object to the "we know" statements. Therefore, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying the instant ineffective assistance of counsel contention.

### 3. Failure to move to sever the charges of PFBPP and PABPP

Petitioner contends that he was prejudiced by defense counsel's failure to sever the PFBPP and PABPP charges because proceeding with both charges allowed the jury to learn that he was a person prohibited from possessing a firearm. The Delaware Supreme Court rejected this argument on post-conviction appeal, primarily because the "parties stipulated at trial that Petitioner was prohibited from possessing a firearm after having been convicted of a felony or a crime of violence involving physical injury." *Wheeler*, 2015 WL 6150936, at *3. The Delaware Supreme Court also held that, "[e]ven if stipulating to [Petitioner's] person prohibited status

21

rather than filing a motion to sever was professionally unreasonable," Petitioner could not establish prejudice because Davis knew Petitioner well and his identification of Petitioner was compelling. *Id.*

After considering the record, and viewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in concluding that Petitioner failed to demonstrate sufficient prejudice. Accordingly, the Court will deny this allegation of Claim Four for failing to satisfy § 2254(d).

### 4. Failure to prepare for cross-examination of the State's ballistics expert

In his fourth allegation of Claim Four, Petitioner argues that defense counsel provided ineffective assistance because he cross-examined the State's ballistics expert without first obtaining and reviewing the expert's report. As noted by the Delaware Supreme Court on post-conviction appeal, the record reflects that the ballistics expert's report was admitted as a trial exhibit prior to defense counsel's cross-examination of the expert, but there is no indication that defense counsel received and reviewed the report prior to said cross-examination. *See Wheeler*, 2015 WL 6150936, at *3. However, the Delaware Supreme Court held that defense counsel did not perform deficiently because: (1) Petitioner did not identify which information in the report defense counsel should have cross-examined the expert on; (2) the State's case focused on eyewitness identification, not ballistics testimony; (3) on cross-examination, defense counsel elicited the expert's testimony that he did not know who shot Davis and that it is possible to leave a fingerprint on a shell casing; and (4) during closing argument, defense counsel

highlighted that there was no evidence of Petitioner's fingerprints appearing on any of the shell casings. *Id.* at *3.

The Court concludes that the Delaware Supreme Court's decision involved a reasonable application of *Strickland*, because Petitioner cannot establish a reasonable probability that the outcome of his trial would have been different but for defense counsel's alleged failure to read the expert's report prior to cross-examining him. For instance, the State's ballistics expert testified that the six shell casings found at the scene were fired from the same semi-automatic weapon, but he did not connect Petitioner to the gun, shell casings or shooting. *See Wheeler*, 2015 WL 6150936, at *3. The case against Petitioner was based on substantial eyewitness testimony, and the ballistic expert's testimony merely corroborated that eyewitness testimony. For these reasons, the Court will deny the last allegation in Claim Four.

### D. Claim Five: Ineffective Assistance of Appellate Counsel

In Claim Five, Petitioner asserts two appellate counsel ineffective assistance allegations. First, he contends that appellate counsel failed to argue that the State engaged in prosecutorial misconduct by (1) misstating during its cross-examination of Davis what Davis said about witnessing Petitioner's exit through the back door; (2) using the phrase "we know" four times during closing argument; and (3) saying "[Petitioner] shot him [Davis]" during closing argument. Second, Petitioner asserts that appellate counsel failed raise the issue of the State's failure to turn over Davis' taped statement.

On post-conviction appeal, Petitioner only presented to the Delaware Supreme Court appellate counsel's failure to object to the second instance of prosecutorial misconduct involving the "we know" statements. (D.I. 21-3 at 1-16) Therefore, he did not exhaust state remedies for

his allegations that appellate counsel was ineffective for not presenting the first and third aforementioned instances of prosecutorial misconduct. Since an attempt to raise these allegations in a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(i)(1), the Court must treat these allegations as technically exhausted but procedurally defaulted.

Petitioner does not assert cause for this default and, therefore, the Court will not address the issue of prejudice. In addition, the miscarriage of justice exception does not apply because Petitioner has not provided new reliable evidence of his actual innocence. Hence, the Court will deny as procedurally barred Petitioner's contention that appellate counsel provided ineffective assistance by failing to raise on direct appeal his first and third allegations of prosecutorial misconduct.

However, Petitioner did present on post-conviction appeal his allegation that appellate counsel was ineffective for not challenging the State's four "we know" statements during closing argument, and for not raising the issue of the State's failure to turn over Davis' taped statement. The Delaware Supreme Court denied these arguments as meritless. Thus, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[7] and an

_____

[7]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

24

attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

To begin, the Court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law, because it cited and applied the proper *Strickland* standard when denying the two remaining ineffective assistance of appellate counsel claims. As set forth below, the Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Strickland*.

### 1. Failure to raise issue of State's improper "we know" statements

The Court has already denied Petitioner's allegation that trial counsel provided ineffective assistance by failing to object that the State's "we know" statements constituted prosecutorial misconduct. *See supra* at 19-21. For the same reasons, the Court concludes that appellate counsel's failure to raise this issue of prosecutorial misconduct on appeal did not amount to ineffective assistance.

### 2. Failure to argue the State withheld exculpatory material

Petitioner asserts that appellate counsel should have argued on direct appeal that the State violated *Jencks v. United States,* 353 U.S. 657 (1957) and the Delaware rules of discovery because it did not turn Davis' taped statement over to the defense before Davis was cross-examined. The record reveals that there is no tape of Davis' statement. Therefore, the Delaware Supreme Court reasonably applied *Strickland* in holding that appellate counsel was not ineffective for failing to raise a factually baseless argument.

### E. Claim Six: Denial of Speedy Trial Right

In his final Claim, Petitioner argues that he was denied his constitutional right to a speedy

25

trial. Petitioner raised this argument in his Rule 61 proceeding. The Superior Court denied the argument as procedurally barred under Delaware Superior Court Rule 61(i)(3) due to Petitioner's failure to raise the issue at trial. Since Petitioner did not challenge the Superior Court's decision on post-conviction appeal, the instant speedy trial violation claim is unexhausted. At this juncture, a new Rule 61 motion raising the speedy trial argument would be time-barred under Rule 61(i)(1). Thus, the Court must treat the Claim as technically exhausted but procedurally defaulted.

Petitioner attempts to establish cause by blaming his post-conviction appellate counsel for not raising the instant speedy trial claim on post-conviction appeal. This argument is unavailing. When his appointed post-conviction counsel filed a motion to withdraw from representing Petitioner on post-conviction appeal, Petitioner was given an opportunity to present any claims he wanted. Although Petitioner did add several other claims, he did not add a speedy trial claim. Therefore, post-conviction appellate counsel's actions do no provide cause for the instant default, and Petitioner does not provide any other reason.

In the absence of cause, the Court will not address the issue of prejudice. The Court also will not excuse the default under the miscarriage of justice exception, because Petitioner has not provided new reliable evidence of his actual innocence. Hence, the Court will deny Claim Six as procedurally barred from habeas review.

## IV.    PENDING MOTION

Petitioner filed a Motion for the Appointment of Counsel during the pendency of this proceeding. (D.I. 27) Given the Court's decision to deny the Petition, the Court will dismiss the Motion for the Appointment of Counsel as moot.

## V.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief.  In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied.  An appropriate Order will be entered.